Welcome to all. And again, Judge Brasher and I just want to welcome Judge Alan Windsor. This is his second day this week sitting with us. He's a district judge for the Northern District of Florida. He is sitting with us by designation. And we always appreciate the and help us out. So thank you. And we hope you'll come back. So we are hearing three cases today. The first case is Estate of James Keeter. Kalen Lewis v. Commissioner of Internal Revenue 22-10196. Charles Hodges is the attorney for the appellants. Douglas Rennie is the attorney for the appellee. Mr. Hodges, you may proceed. And I see that you have reserved three minutes for rebuttal. May it please the Court, my name is Charles Hodges and I do represent the appellants, Estate of James Keeter, his wife Julie Keeter, and their daughter Kalen Lewis. I have reserved three minutes for rebuttal. Your Honors, the tax court in this case lacked jurisdiction for three reasons. First, the tax adjustments that were in the deficiency notices were invalid as a matter of law, as that is determined under 623828. Most notably, the tax court pointed out three things. Holding periods of assets distributed by the partnership, the character of the gain or loss for the stock, and the identity of those assets on the 1040. All this information was accepted by the IRS and all that remained was a mathematical computation and a recomputing the tax liability of the Keeters, which in fact it did. In short, it was incorrect to split the Keeters notices into two, taking them into tax court and taking them into the district court. You concede in your brief that there's nothing in the statute that prohibits the splitting that you've just described. There is nothing that splits it. I will say that the two cases that the IRS and the tax court primarily relied upon did not split. I cannot find any cases that are cited where the IRS did split. And so therefore, they put them all into one. For example, here, the split, so you would know, is one is capital gain itemized deductions. Literally, those two exact things are listed in the exact same notice of computational adjustment as well as the notice of deficiency. If I am literally arguing my capital gains in two different courts, the possibility of there being some difference of opinions in those courts is clear. And that's why this is a very narrow exception. And I will say, which is my second point, this is the part, Your Honors, that Judge Brasher and Judge Branch, you're no stranger to tax cases. And what do you see in every case? It's the code, and then it's followed right behind with the Treasury regulations interpreting. Here, the two cases the tax court relied upon, they didn't misconstrue the IRS regulations. They didn't even cite them. But you have a separate claim-splitting argument, right? That's just an idea of something we should consider in interpreting the statute that does control. Is that the way? Am I looking at that right? Yes, Your Honor. I think it's two ways. One, there's this concept that the IRS raises is, hey, we gave you additional due process rights. Well, you actually didn't because you took me to two different courts. That's one. Two, we have to think that Congress knew when they came up with 6230 that, look, our goal for TEFRA, which is the partnership rules that govern auditing and litigating against a partnership, that what is its main goal is to minimize litigation. We have a partnership-level proceeding, and then what happens is we come down to the partner and we say, here's two more proceedings. And so I just believe a strict construction of this statute will dim in it because it is a narrow exception. Let me ask you this. On your first point about reading the statute and which one they should have gone under, whether this is a partner-level or partnership-level issue, you say in your brief that we can distinguish the Ninth Circuit case and the Sixth Circuit case. Yes. And I would like you to explain how we can do that because I guess I'll just say it seems difficult for me to read those cases in a way that we can distinguish them. It seems like what you're really suggesting is that we just create a circuit split. Your Honor, thank you for that question. So the first of all, the cases all rely upon, including the tax court and the Ninth Circuit in Napoli Olo, rely upon the Sixth Circuit indecement. Okay. Indecement, two things. One, it's factually and legally distinguishable. Here's how it's factually distinguishable. Here we have a, in that case, you have a partnership level and you're trying to get what is the partner's tax liability? There is an S corporation with its own tax return, an 1120S, with tax credits in between. And so, therefore, that's what the Sixth Circuit said is that we're struggling with is that we have to deal with this S corporation. We don't have that middle tier. But that's not the most important thing. The most important thing here is, is that indecement, they failed to analyze the text of the statute and they don't even cite to the regulations. If the same approach that's done — I'm not making an argument that we should just create a circuit split and say that the Sixth Circuit got it wrong, I guess. And that's fine. You can make that argument. I just am trying to figure out, is that really your argument that we should just create a circuit split? It's threefold. It would create — I do not believe it would create a circuit split in light of the factual distinction. But here's the other reason. And this also ties into my party presentation that I was mentioning. How did Desmet get this? How did they get the result that they did? And it was based upon the arguments by the taxpayer and the IRS there. The taxpayer said, hey, look, you can go to the notice that was issued to the partnership and compute the partner's tax liability. And the IRS said, no, you can't. Well, to be candid, the taxpayer got the argument wrong. But that's why the Sixth Circuit was led astray. But interestingly enough, how did this happen? How did it happen? Because there was not even a looking at the Treasury regulations that are directly on point that simply say this. If all that needs to happen is, is we get the result of a partnership-level case and the income is increased, the deductions are reduced, and all we do is we take those results and we drop it onto a 1040 of a partner and recompute it, we don't need a partner-level determination. Why isn't it fair? The IRS's position, looking at the stock and the foreign currency, to say we can't be sure that the stock that was, that went to the taxpayer, that he didn't have other shares of that same stock, that he didn't have other foreign currency. So we have to look, go back and see what was, how long have these stocks been held? When are they sold? Why is that not fair? Even if, at the end of the day, it turned out to be a simple computation. Why isn't that fair for the IRS to say, we need to verify that? All of the cases turn, and all the cases turn on this concept, is, is that did the IRS have the information they needed in this particular case to make the mathematical computations?  You are right, Judge Branch, in the sense that the IRS said, yeah, but theoretically, there could have been a dispute about how many shares of stock. But the Schedule D of the Keters says 242 shares of Coke stock. On, in Doc 19, page 9 by the IRS, they specific, which was their response back in the tax court, they say, it doesn't appear that there were any partner-level determinations. But, so here's, here's the issue, and I'm just following up on Judge Branch's question. I mean, you're asking us to look at this kind of in hindsight and say, was there a dispute about, for example, the portion of the stock that was actually sold or the holding period of the stock? But the IRS has to make this determination without hindsight. It has to decide, what forum are we going to use for the taxpayer to, to dispute these things if they want to? How, how does your argument map on to what the IRS actually has to do, which is, it doesn't know whether any of the stuff is going to be disputed. It has to choose a forum. Your Honor, great. So, let's take one simple thing. Let's take the stock that was sold, the Coke stock that was sold by the Keters. All right, so what happened was, the IRS looked on the 1040 of the Keters, and they saw 242 shares of Coke stock were sold. Here are the proceeds. They recomputed the basis based upon the result of this. They made the computation. Done. So, the fact that theoretically, there could have been some, but, but, so then what happened, let's say that some way, somehow, the taxpayer decides, you know what, yeah, we want to say that it was 252 or whatever, but that's not in dispute. What is reported on the Schedule D were the shares. The IRS admits in this case, and this is what I think is clear, they say there were no partner-level determinations made. This is all theoretical. So, the question is, is when we're down on the 1040. Yeah, but what if, but what if, I guess, that's, isn't that only because your clients didn't dispute? I guess that's my point. No, no, sorry. Like, had your clients come in and said, I mean, had your clients, I think this was Coca-Cola stock. Yes, Coca-Cola stock, correct. So, if the client, your clients had come in and said, like, oh, actually, we have, like, 500,000 shares of Coca-Cola stock just generally, and this, this stuff that we sold in this particular year was not the same stock that we received from the fake partnership. If they had said that, then wouldn't that have to be litigated? On the four corners of the 1040, it said 242 shares. So, the IRS did not disagree with the, with the, the actual character of the game, the identity of this stock. They took the results from the partnership level, which only changed basis. They plopped it down, and they plugged it into the 1040, and it was done. And so, therefore, there was no re-computing. But they still didn't make a determination. I mean, I know in this case, it was a short-term gain either way, but suppose that they attributed some greater length to the partnership, and it was reported initially as a long-term capital gain, and then this decision comes along, and now it's short-term because you're, you're excluding that. Would that be a partnership determination? That's, exactly, Your Honor. So, that, you're getting it. So, in the sense... No, no, but would it be? Well, yes, in the sense of that if the taxpayer says, hey, wait a second, I've now decided on my 1040, I said it was short-term, but I've now decided... No, no, no. I'm saying it's long-term coming from the partnership. My understanding is you would attribute the length the partnership held it. So, it's long-term. It's reported, just like it was in this case, but it's long-term. Then, at the partner level, they say, well, the whole, we're disregarding the entire operation here, and now it becomes a short-term. No, as long as that's the result coming from the partnership, no, there would be no partner-level determination. The only way there'd be a partner-level determination is if that 1040 said short-term, and the IRS said, we're accepting short-term. We accept that, which is what happened here. But then, the taxpayer takes a step back afterwards, and they get their notice of computational adjustment, which is nothing more than a bill from the IRS. And the taxpayer takes a step back and go, you know what? We don't agree with our own reporting. We don't like our own reporting. So then, that's exactly what claims for refund are all about. I don't like, which is a notice of computational adjustment, I don't like my own reporting. Does it matter how the basis was determined in this case? My understanding is the basis did not go away entirely. There was some nominal basis. Does that matter here? Yes, so here, what happened was, on the 1040, the basis was what they said was their outside basis in the partnership. Okay, so that went to zero based upon the district court decision. Once that went to zero, now, our basis on the 1040 was whatever the partnership paid for it. The IRS mentions that, oh, well, that had to be determined. It can't be. How much the partnership paid for its assets is a partnership-level item that cannot be analyzed here. So, we drop down how much, which is what the IRS did. The Coke stock was paid for $10 a share, and so, therefore, boom, here is how much when we just simply apply the results of the partnership straight onto your return, and we take everything else on your return as true. We don't challenge character, holding period, identity. We challenge nothing. Then, we can simply do the math of the IRS and send you a bill. If you want to change your position taxpayer on capital gain, holding period, anything like that, then you can file a claim for refund. But if we agree with your return, you do not get a notice of deficiency. I see that I'm out of my tundra. Thank you. But you do have three minutes for a rebuttal. Thank you. Mr. Rennie. Good morning, Your Honors. Douglas Rennie for the Commissioner of Internal Revenue. Your Honors, this case concerns the tax treatment of losses claimed by partners on their sale of assets distributed by a sham partnership. The question before the Court is whether the IRS had to follow deficiency procedures to adjust those losses, thereby giving the partners a prepayment forum to challenge the IRS's decisions. All courts that have addressed this issue, including the Sixth Circuit, the Ninth Circuit, and the Tax Court on multiple occasions, have held that deficiency procedures were required. Nonetheless, the taxpayers here argue the IRS erred by giving them the opportunity, but certainly not the obligation, to challenge the adjustments before payment. In doing so, they rely on cases that didn't involve partnerships distributing assets to the partners. The cases they're relying on involve simpler adjustments to the partners' distributive shares of income, losses, deductions, and credits. In many of those cases, also involved partners affirmatively stipulating to the adjustments before the IRS issued the applicable notice. The result the taxpayers are seeking here will not benefit other similarly situated taxpayers. They'll be deprived of a prepayment forum to challenge IRS adjustments in this circuit. Nor will it benefit the IRS, which administratively would be faced with a circuit split. They're the only ones who could benefit potentially from the result here by avoiding millions in dollars in tax liabilities that they do not dispute they owe on the merits. Did the IRS have all the information it needed on the stocks and foreign currency when it issued the notice of deficiency? It certainly made determinate, it made decisions regarding that. So, some of the things we were talking about earlier, including the basis, the taxpayers repeatedly assert that the basis came from the partnership return or the partnership proceeding. We don't have anything in the record supporting those claims, and they don't cite anything to that effect. And I haven't seen anything to that point even in the supplemental materials that they have filed. So, it isn't clear where the basis came from. And this is the reason why you would give the taxpayer a prepayment forum to challenge it, to say, no, we don't think you got the basis right. We think that this stock was purchased at a different time, or these euros were exchanged at a different point in time. You didn't use the right information. And therefore, want to challenge it. I understand, I say, I understand your position, I think, on the stock. Makes perfect sense to me that, you know, for all you know, someone has a bunch of different stock, and they sell it at different times, and it's something that you're going to have to adjudicate. On the euros though, can you explain to me why the euros would be similar to that? Because, well, just could you explain that to me? With the euros, you still have an identity issue. Are these the same assets that were distributed to the partners that they sold? And this is particularly important in this case, because the record really isn't clear over how many, it looks like the Keters exchanged more euros than they received from the partnership in the years at issue here. So the IRS had to make some kind of decision and say, okay, we think these are the euros that were exchanged at these times, and we're attributing this basis to the euros. So it may not be all the same information. So it's less the holding period issue, but it's more just the identity issue that, like, for all you know, they have a ton of euros, and that these are unrelated. These euros that they're trading in on a particular period are unrelated to the euros that they get from the partnership. Correct, Your Honor. Okay, I understand that now. What do you say about the claim-splitting issue? And here's, you know, I don't know, I'm having a difficult time figuring out sort of how to address that issue. I mean, under either one of your readings, I think there's claim-splitting that's going to be required by the statute, right? How would you suggest we address that? Is that a problem? Should we address it? What do you think about that? We don't think it's a problem, because it's what the statute contemplates, and I think that the Sixth Circuit essentially said that in the Desmet case, where it said there are some circumstances where the statute contemplates that there are going to be deficiency procedures followed, even if the general rule is a computational adjustment that is directly assessed. The other thing I'd point out is that the mere fact that you get a deficiency notice doesn't mean that you have to challenge it in the tax court. You could always challenge it, you could pay it, and challenge it in a refund action. Presumably, if they wanted to challenge the notice of computational adjustment and the deficiency notice, they could have paid the deficiency, they could have paid everything and filed a refund action in one proceeding. And regarding the point that Mr. Hodges made regarding the computational adjustment notice, these really aren't the same adjustments. You can, we do have the notices of computational adjustment in the record. And so there are some capital gains and itemized deductions listed in there, but you can tell by the amounts that they are not the same as the items that were adjusted in the deficiency notices here. The amounts of the capital gains being adjusted there are in the tens of thousands of dollars. I believe it's about $70,000 for the Keters and $10,000 or $20,000 for Lewis, whereas the losses, the capital adjustments in the deficiency notices, you're talking about millions of dollars. And all of these adjustments, the other adjustments are things like interest income, bank fees, investment interest expenses. All of these things are numbers that you can go look back at the K-1 that Sanford, the partnership, reported. And you can see the line item that they're talking about on the notice of computational adjustment, unlike the deficiency notice where there was a lot more decision making required. So on the notice of deficiency, it's obviously a lot more work for the IRS to have this proceeding. I'm curious, just as a matter of policy, does the IRS try to work with the taxpayer before it's necessary to make the decision which route you're going to take to get the taxpayer to agree to the basis, to agree to the holding period, things like that? Your Honor, I'm frankly not sure. We don't really have in the record as to what went on. I know there was some discussion between the taxpayers and the IRS going back to the original audit of the partnership proceeding. And you can see in some of these cases, if a partner wants to quickly resolve some of these issues, it is possible to stipulate to, here's what the adjustments would be pending the outcome of the partnership proceeding. I just don't even want to wait for the partnership proceeding. And I want to settle this with the IRS. It's possible to do that. And you see that was done in cases like Olson and Bush and I think maybe Bob Hamrick as well. So I can't, I don't know specifically the answer to your question, Your Honor. But I believe it is possible to resolve some of these issues without going through this 20-year process like we've gone through here. Well, I was just curious because obviously they're fighting what you have done. In fact, in the blue brief, they make the statement that the IRS actually needs to lose this case because of the additional work that's given to the IRS when you choose this route. We disagree with that, Your Honor. We think that the administrative problems created by this Court potentially disagreeing with the Sixth and Ninth Circuits would be a lot more work than the possibility of issuing some more notices of deficiency. Yeah. Can I get you to follow up on one of opposing counsel's responses to my questions on the Sixth and Ninth Circuit? He says that, I'm just going to say I think his argument is that we should just disagree with them. I don't know that his argument really is that we can distinguish those cases. So let's assume that he's just arguing that we should disagree with those and create a circuit split. He says that the reason to do that is because they didn't consider the regulations. What do you say about that? I disagree with that, Your Honor. I think the regulation that I think he's relying on most prominently is this, let me see if I've got this right, Section 301.6231A.6.1, which says, substituting redetermined partnership items for the partner's previously reported partnership items doesn't constitute a partner-level determination. Yeah. Can you explain to me in normal human speak what that means? I think essentially what that is saying is that in situations where the partnership is and I'm a partner who has a 50% share of that, so mine changes from $50,000 to $25,000, that's a simple flow-through adjustment. That doesn't require a partner-level determination. I think that's essentially what that is saying here. But regardless, there's no showing, again, that I think what he's essentially saying is that this means that if you take the basis from the partnership return, then that's also a simple flow-through thing. That's not quite right. But in any event, there's no showing that that's what happened here. The problem is really that you've got another level here. And I think this is explained in the Gunther case, which this court affirmed on appeal. But basically, because this is a situation where the assets were distributed to the partners, it's, you don't follow the basis rules that you would normally follow for a distributed asset once the partnership is determined to be a sham. You have to then go back and treat these assets as if the partners acquired them, held them, and disposed of them. And that leads to a whole set of potentially different factual conclusions than you would have if you were following the rules that they reported. So we would submit that the regulation they're talking about is not applicable. It doesn't change the analysis that Desmet and Napolio are on point here. I think the other point he raised was that there was an S corporation involved in the Desmet case. Here we had an LLC involved. They're essentially both flow-through entities. They don't really change the analysis. Isn't the simplest way of looking at it is that this proceeding would apply if you have to consider specifically what the individual taxpayer did and not what the partnership did? And in this instance, if this particular taxpayer would have held onto the Coca-Cola stock for another year or two years, then the way that the taxable event of that sale of stock would be looked at would be completely different because of the actions of that partner, irrespective of what happened at the partnership level? I think that's essentially right, Your Honor. Here you have to consider the individual partner's circumstances. It's not a simple flow-through mathematical question of you had a 50% share of the partnership. Therefore, you get 50% of the adjusted losses versus the regular losses. Here you have to go look at how long was the partner holding this stock? Is this the same stock that was distributed? Did they have other stock? Did they have other assets? You say at the outset that the partnership didn't, this basis that led to the inflated loss was not reported to the IRS by the partnership itself on some return? Is that what you said at the beginning of your argument? We don't have anything in the record saying that. It's not necessarily something that you would expect to see on a partnership return since they... If this had not been a sham situation and someone was legitimately attributing a basis to something that had been contributed to the taxpayer by a partnership, how would the IRS go about testing that basis? If they did an audit, they'd have to go back and look at what the partnership did, or how would that work? You're asking what would an agent do in that situation if they don't have it reported somewhere? Well, kind of, or how is it determined? I mean, it seems things like that would be determined at the partnership level. I mean, those would be records of the partnership and not the taxpayer would have, right? Well, the partnership proceeding, the main point of that was determining that the partnership was a sham and should be disregarded. So it's not necessarily a situation where the district court is going through and making individual basis determinations because the big picture issue there is not what was the basis of these assets. It's should this partnership be regarded as existing. In terms of what an individual agent might do in trying to figure out what basis to attribute in circumstances where they don't necessarily have that information, if they had, certainly they'd look at that partnership proceeding, look at the records, see if there's something there. They could also look at publicly traded information. Here we're talking about Coca-Cola stock, things like that. Although you might not necessarily know what date it was acquired. You might have to guess there, that kind of thing. So you can make an educated guess, but you might not necessarily know, you know, the taxpayer could come back and say, no, we think the stock was acquired on a different date at a different price, et cetera. See, I'm out of time, Your Honor. So if you have no further questions, we submit our brief. Thank you. Thank you. Mr. Hodges, you have three minutes for rebuttal. Your Honor, again, I think this, the regulation 301.6231A6-1A2 is going to answer a lot of your questions. Because again, the decimate court doesn't even cite to it much, and much less analyze it. The tax court here does not. Judge Windsor, to hit your point, such as, well, what if the taxpayer did something else on the 1040, like long-term capital gain, then it's got to be addressed. The regulation specifically says that there's no partner-level determination required where the IRS otherwise accepts for the sole purpose of determining the computational adjustment, all non-partnership items, including carryover amounts, including medical expense deductions, everything that's on that 1040. If, using the example from counsel, if you take that $50,000 and you drop it down onto the 1040, and you simply say, I'm recomputing the 1040 with this change from the partnership, but I'm accepting everything else. You call it long-term capital gain, we, the IRS, will agree. You want to call the holding period six months, two years, three years, if we agree with you, the IRS does. On the 1040, if we agree with the 1040, all the non-partnership items, and we're only just plugging in what happened from this case, no partner-level determination. I think that that's why it's so important to see that Desmond, Judge Brasher, got it wrong, because it literally, its issue is this. This is how the Sixth Circuit frames it. We must decide whether the petitioner's tax liability relates to items that the IRS was the partnership. It's like, wait, this is a partner-level determination. The regulations say you can even look at the medical expenses, the itemized deductions. If the IRS accepts them, then it's a notice of computational adjustment. You get a bill, no notice of deficiency. So how is it then, but my medical expenses as a partner are never going to be mentioned in a partnership-level proceeding. They're just talking about that threshold, right? It's the threshold. Because your income changes, the threshold changes, so that would flow naturally. Correct. It's a non-partnership item, but the non-partnership item would also be my holding period, and it would be my long-term capital gain or short-term. Quickly, I want to hit on the basis issue that was raised. In the end, legally, that could not be a partner-level determination. The IRS counsel mentioned that we don't know where it came from. It came from them. Where did it come from? It came from what they said was the cost basis to the partnership, the IRS. The IRS said, hey, the partnership paid what, you know, I'm just using this, $10 a share for the Coke stock. Let's say that we were like, no, Coke stock was trading at $4 that day. We can't challenge that. That's a partnership-level issue, and Congress is specific. I can't challenge a partnership's cost basis in my partner-level determination. The next thing is that, which I think is important, I think I'm hearing this, which is the theoretical, but, yeah, but what if, what if? You have exceeded your time, so if you want to finish that sentence. Okay. It is the theoretical. There's no case cited by either party where the Court said, theoretically, the 1040 could be in question, so, therefore, we're going to allow it. It is actual facts. Thank you, Your Honors. All right. Thank you both. We have your case under advisement.